IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION

ROY D. BURNS, ADC #091713                                                         PLAINTIFF

V.                            CASE NO. 2:11CV49 SWW/BD

SARGEANT EDWARD D. EATON, ET AL.                                         DEFENDANTS

BRIEF IN SUPPORT OF ADC DEFENDANTS
MOTION FOR PARTIAL SUMMARY JUDGMENT

Come now Arkansas Department of Correction (ADC) Defendants, Edward Eaton and Retina White, by and through their attorneys, Attorney General Dustin McDaniel and Assistant Attorney General Ka Tina R. Hodge, and for their Brief in Support of their Motion for Summary Judgment state as follows:

I.  **INTRODUCTION**

Plaintiff brings this action pursuant to 42 U.S.C. §1983 alleging that Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment. Specifically, Plaintiff contends: (1) That Defendants used excessive force through the application of peppery spray; and (2) That Defendants displayed a deliberate indifference to his medical needs. Defendant Retina White is entitled to judgment as a matter of law on Plaintiff's claims because Plaintiff failed to exhaust his administrative remedies prior to filing this lawsuit. Defendant Edward Eaton is entitled to judgment as a matter of law on Plaintiff's claims because any force used against Plaintiff was done in good faith effort to maintain order and discipline. Additionally, Plaintiff has failed to state a claim upon which relief may be granted and he will not be entitled to any monetary damages because he suffered no physical injury. Therefore,

1

Plaintiff's complaint should be dismissed and summary judgment entered in favor of Defendants Edward Eaton and Retina White.

## II.   STANDARD OF REVIEW

Summary judgment is appropriate when there is no genuine issue as to a material fact, and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56 (c). The Court views all evidence in the light most favorable to the nonmoving party. *See Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994). To defeat a motion for summary judgment, the nonmoving party has the burden "of presenting evidence sufficiently supporting [any] disputed material facts that a reasonable jury could return a verdict in [his] favor." *Gregory v. City of Rogers, Arkansas*, 974 F.2d 1006, 1010 (8th Cir. 1992)(*citing Anderson v. Liberty Lobby*, 477 U.S. 424, 248 (1986)). Plaintiff "may not merely rest upon allegations or denials in [his] pleadings, but must set forth specific facts . . . showing that there is a genuine issue for trial." *Ghane v. West*, 48 F.3d 979, 981 (8th Cir. 1998) (*citing Burst v. Adolph Coors Co.*, 650 F.2d 930, 932 (8th Cir. 1981). Plaintiff will not be able to show a deprivation of constitutional rights by either Defendant, therefore, Plaintiff's complaint should be dismissed.

## III.   FACTS

Defendants incorporate by reference their statement of facts as if set forth word for word.

## IV.   ARGUMENTS

**A. Defendants are entitled to Sovereign Immunity in their official capacities.**

The doctrine of sovereign immunity deprives federal courts of jurisdiction over suits against states, their agencies, boards, commissions, and employees thereof in their official capacities, unless the state has waived its immunity or Congress has abrogated that immunity pursuant to a valid exercise of Congressional power. *See Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 54 (1996); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The State of

Arkansas and its agencies and officials have not consented to suit in federal court, (*see Burk v. Beene*, 948 F.2d 489, 492-93 (8th Cir. 1991)), and Congress did not abrogate the states' sovereign immunity when it enacted 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 66-67 (1989). Accordingly, Plaintiff's official capacity claims against the ADC Defendants for money damages must be dismissed.

### B. Plaintiff failed to exhaust all administrative remedies against Retina White

The Prison Litigation Reform Act states "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Part of the reasoning behind the exhaustion requirement is to give the facility a chance "to address complaints about the program it administers before being subjected to suit." *Jones v. Bock,* 549 U.S. 199, 219 (2007). This requirement also helps by "reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Id.* It is well settled that an inmate must exhaust all administrative remedies in accordance with the institution's procedural requirements. *See Jones v. Bock*, 549 U.S. 199, 218 (2007) (explaining that: "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion")

The Arkansas Department of Corrections ("ADC") inmate grievance procedure in effect at the time of the incident was Administrative Directive 09-01. (Ex. 1). For an ADC inmate to fully exhaust administrative remedies, the inmate must file: (1) an informal resolution (unit level grievance) within 15 working days after the occurrence of the incident; (2) a formal grievance with the Warden within 3 working days of denial of the informal resolution; (3) an appeal to the

ADC Deputy/Assistant Director within 5 working days of the Warden's Decision. (Ex. 1, p. 5-12) Inmates are also required to specifically name each individual involved for a proper investigation and response. (Ex. 1, p. 4) The grievance procedure specifically states "Grievances must specifically name each individual involved for a proper investigation and response to be completed by ADC. Inmates must fully exhaust the grievance prior to filing a lawsuit. Inmates who fail to name all parties during the grievance process may have their lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties." *Id*. Additionally, the grievance form itself informs inmates that they are to identify all personnel involved. *See for Example* Ex. 5, p. 1)

In this case, Plaintiff was taken to a shower following treatment for scabies. (DE 2, p. 2) While there, Plaintiff was given several direct orders to submit to restraints, which he refused to follow and ultimately began throwing objects and propelling bodily fluid at Defendant Eaton. (Ex. 3, p. 1; DE 2, p. 8-9) Following the incident, Plaintiff filed an informal resolution whereby he named only Defendant Eaton. (Ex. 5, p. 1) After 14 days had passed, Plaintiff took it upon himself to file a formal grievance with the Warden. (Ex. 5, p. 1) At this point in time, there was still no mention of Defendant White. (Ex. 5) Warden Burl responded to Plaintiff's grievance on August 6, 2010 and denied it, citing that Plaintiff had been found guilty of five disciplinary charges arising from the July 2 incident; that Plaintiff admitted that he refused to be cuffed; that Sergeant Eaton advised that the only reason Plaintiff had been sprayed was because he was combative toward staff; and that Plaintiff's grievance had no merit. (Ex. 5, p. 2) On August 10, 2010, Plaintiff appealed Warden Burl's decision, and the Warden's decision was affirmed by Director Larry May on October 13, 2010. (Ex. 5, p. 3)

Plaintiff's entire grievance process lasted a total of 73 days. (*Se* Ex. 5) At no time during the entire seventy-three days did Plaintiff name Defendant White as one of the officers involved in the July 2 incident. (*See* Ex. 5) As such, Plaintiff failed to name each Defendant he has sued. This failure is fatal to his claim. The ADC's Inmate Grievance Procedure requires that Plaintiff name all individuals involved for proper investigation of his complaint. (Ex. 1, p. 4) Additionally, Plaintiff was allowed fifteen days from the date of the incident to file an informal resolution against Officer White. (Ex 1) Plaintiff's complaint alleges the incident occurred on July 2, 2010. Therefore, Plaintiff's was required to file an informal grievance against White no later than July 17, 2010. Plaintiff filed grievance number EAM10-02858 on July 14, 2010. (Ex. 5) In that grievance he describes the events that took place on July 2, 2010 but only named Defendant Eaton. (Ex. 5, p. 1) The next grievance Plaintiff filed was received on July 12, 2010 and involved a wholly separate incident that neither involved Sergeant Eaton, nor Officer White. (Ex. 4)[1] By failing to file a grievance naming Officer White within the specified time frame, Plaintiff has failed to properly exhaust his administrative remedies, and Defendant White is entitled to judgment as a matter of law.

**C. Plaintiff's Eighth Amendment claim for Excessive Force should be dismissed because Plaintiff was not subjected to Excessive Force and Defendants are entitled to a Judgment as a matter of law.**

Plaintiff's complaint against Sergeant Eaton should also be dismissed. To sustain an Eighth Amendment claim against Defendants for use of excessive force, Plaintiff must demonstrate that force was not used "in a good-faith effort to maintain or restore discipline" but,

---

[1] In that grievance, Plaintiff complained that he had been placed next to another inmate for fifteen seconds while the escorting officer stood twenty-five feet way. (Ex. 4)

5

rather, was administered "maliciously and sadistically to cause harm". *Hudson v. McMillian*, 503 U.S. 1, 112 S.Ct. 995 (1992). "Because the use of force is sometimes required in prison settings, guards are liable only if they are <u>completely unjustified</u> in using force." *Irving v. Dormire,* 519 F.3d 441, 446 (8th Cir. 2008) (quoting *Hudson,* 503 U.S. at 9). "Routine discomfort is a part of the penalty that criminal offenders must pay, so only extreme conditions that deprive inmates of a 'civilized measure of life's necessities' violate the Eighth Amendment. *Id.*

Moreover, "[b]ecause a § 1983 action is a type of tort claim, general principles of tort law require that a plaintiff suffer some actual injury before he can receive compensation." *Irving,* 519 F.3d at 449 (quoting *Carey v. Piphus,* 435 U.S. 247, 253-255). "Not every push or shove, even if it may later seem unnecessary in the peace of a judges' chambers, violates a prisoner's constitutional rights." *Johnson v Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973). The Eighth Amendment prohibits cruel and unusual punishment and necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not a of a sort repugnant to the conscience of mankind.

Sergeant Eaton is entitled to a judgment as a matter of law because he was completely justified in his application of force, his force was tempered, and applied in a good faith manner to maintain and restore discipline. This court has considered facts of similar nature to those presented in this case and ultimately concluded that the plaintiff-inmate was not subjected to excessive force. In *Conway v. Moses Jackson,* Case No. 5:10cv225 JLH-BD, this court considered a claim that Defendant used excessive force against Plaintiff when he was sprayed with a one-second burst of chemical agent after refusing repeated direct orders to be restrained and after presenting a dangerous situation by tying a bed sheet around his neck. In the *Conway* opinion, this Court found that the plaintiff-inmate was angry and out of control and threatened

and shouted obscenities at officers. *Id*. Relying on the ADC's Administrative Directive 09-17, the court noted that non-deadly force was acceptable to protect persons from foreseeable injuries. *Id*.

In our case, Plaintiff, much like Conway, refused to be restrained despite repeated direct orders to do so. In fact, Plaintiff admits repeated instances of misconduct and refusal to follow Sergeant Eaton's orders in his complaint. For example, Plaintiff readily admits that Eaton came to the shower at instructed him to "catch the cuffs," to which Plaintiff responded, "No!" (DE 2, p. 8) Eaton told him again to catch the cuffs, Plaintiff responded "No!" (DE 2, p. 8) Plaintiff then claims that Eaton warned him that if he continued to refuse direct orders, then chemical agents will be used. (DE 2, p. 8) Instead of complying with Eaton's orders, Plaintiff asked Eaton to pass a message to another inmate. Eaton refused. (DE 2, p. 8) At this time, Plaintiff states he was given a third direct order to submit to restraints. (DE 2, p. 9) He refused, opting instead to assault Sergeant Eaton with a shampoo bottle, a soap dish, and finally began spitting and shouting obscenities at Sergeant Eaton. (DE 2, p. 9; Ex. 3, p. 1) Each time Sergeant Eaton attempted to exit the Isolation area in order to get his supervisor, he was assaulted by the Plaintiff. (Ex. 3, p. 1) Plaintiff then called Eaton a "Bitch Nigger bitch ass" and threatened to stab him. (Ex. 3, p. 1) Plaintiff's failure to submit to restraint poses a security risk because his outward display of violence showed a clear intent to continue disregarding orders and that he was willing to do physical harm. Furthermore, he posed an additional security threat when he began throwing objects, spitting, and yelling threats and obscenities at Sergeant Eaton. Just like the officers in *Conway*, *supra,* Eaton was properly following ADC policy regarding Use of Force by applying non-deadly force in order to restore order and abate an increasing security concern. Therefore, Eaton, like the officers in *Conway, supra,* is entitled to Judgment as a matter of law.

It was not unreasonable or unconstitutional for Eaton to use chemical agents in response to Plaintiff's rising violence and out-of-control behavior or to encourage him to come to the cell door and be restrained. *See Conway, supra.*

Furthermore, the Eighth Circuit's opinions in *Treats v. Morgan*, 308 F.3d 868, 875 (8th Cir. 2002) and *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000), also cited in the *Conway*, *supra*, opinion, support a judgment in Defendant Eaton's favor. In *Treats*, *supra*, the Eighth Circuit held that pepper spray may be used if "the inmate's noncompliance . . . poses a threat to other persons or to prison security." In *Treats v. Morgan*, 308 F.3d 868 (8th Cir. 2002), an inmate brought an excessive force claim against Officers James Morgan and J. Beaty after he was sprayed in the face with capstun pepper spray at the North Central unit. The inmate testified as follows at an evidentiary hearing. On October 8, 1998, prison officials removed a radio from his cell. *Id*. at 870. Approximately one hour and a half, the inmate was summoned to Lieutenant Beaty's office to sign a confiscation form. *Id*. The inmate signed it but refused to take a copy with him. *Id.* Officer Morgan followed the inmate out of the Lieutenant's office and demanded that he take the form. *Id*. He responded that it was not mandatory for him to take the form and turned to go back to the Lieutenant's office to ask him about it. *Id*. Without warning, Officer Morgan sprayed him in the face with pepper spray. *Id*. Beaty then came out of his office, knocked the inmate to the floor, and handcuffed him. *Id*.

The ADC's regulations regarding use of chemical agents were introduced and provide in pertinent part that an officer warn an inmate prior to using a chemical agent. *Id*. at 870-71. The regulations also provide that an officer may use non-deadly force to compel an inmate's compliance when other methods of persuasion are not effective and noncompliance jeopardizes safety and security of the institution. *Id*. at 871. Chemical agents, such as capstun pepper spray,

may be used only when an inmate threatens bodily harm to himself, other inmates, or individuals, will not produce an item or will not relocate. *Id*. Chemicals may not be used as a means of punishment. *Id*.

In considering Treats' case, the Eighth Circuit acknowledged: "Officers are permitted to use force reasonably "in a good-faith effort to maintain or restore discipline . . . ." *Id*. at 872. The Eighth Circuit concluded, however, that Defendants were not entitled to qualified immunity and that the district court had not erred in denying their motion for summary judgment. *Id*. The inmate, the court stated, had not jeopardized any person's safety or threatened prison security at the time he refused to take the confiscation form. *Id*. at 872. The court noted that, at the time of the incident, which included being pepper sprayed and knocked to the ground, Treats had not used profanity or abusive language or threatened any corrections officer. *Id*. The *Treats* court also noted that the officer might have tempered his force by warning inmate Treats prior to administering pepper spray. *Id*. at 874. And, the court found significant that Officer Morgan had failed to follow the ADC's policy on use of chemical agents by failing to warn inmate Treats prior to spaying him. *Id*. at 875.

This matter is factually distinguishable from the *Treats* facts and the *Treats* decision demonstrates that Sergeant Eaton is entitled to a judgment as a matter of law. First, unlike the officers in *Treats*, *supra*, Sergeant Eaton did follow ADC's policies on use of force and chemical agents. Administrative Regulation 409 is the ADC's Use of Force policy. (Ex. 7) It provides in relevant part that force may be used when necessary in order to restrain, maintain or regain control of an inmate with a minimum of injury to staff, inmates, and others. (Ex. 7, 1) Additionally, Administrative Regulation 410 authorized Sergeant Eaton to utilize chemical agents. (Ex. 8) Administrative Regulation 410 provides, "It shall be the policy of the

9

Department of Correction to ensure that the use of chemical agents and other non-lethal weapons against an inmate be undertaken with a minimum amount of force. Only when the inmate threatens bodily harm to himself/herself, other inmates, or individuals, will not produce an item(s), or will not relocate, may chemical agents or other non-lethal weapons issued by the Department be employed." (Ex. 8, p. 1)  Additionally, Administrative Regulation 409 provides that an officer may respond with force necessary to control the situation.  As the inmate's resistance or force increases, the amount of force should also increase or decrease to a point where control is obtained. (Ex. 7)

There is no material dispute of facts concerning the activities that lead up to plaintiff being pepper sprayed.  Plaintiff concedes that he was asked to come out of the shower and given multiple orders to submit to restraints.  (DE 2, p. 8-9)  Sergeant Eaton's disciplinary report, incident report, and affidavit also make clear that Plaintiff was given several opportunities to submit to restraints and exit the shower to be relocated to his cell.  Plaintiff simply would not comply.  Pursuant to AR 409, AR 410, and the *Treats*, *supra*, decision, Eaton was justified in employing the minimum amount of force, via chemical agent.  AR 410 permits the use of chemical agent when an inmate refuses to relocate.  Here, Burns admits that he refused to exit the shower and relocate to his cell.

Next, the undisputed facts show that there was an objective need for the type of force used against Plaintiff because he presented a threat to persons or security.  Unlike Treats, Burns presented a clear threat to Eaton and also to prison security in general.  By throwing objects at Eaton, Burns was outwardly displaying a violent temper that could easily lead to physical injury of any person who attempted to remove him from the isolation shower.  In fact, Burns admits that during the incident he was "really mad."  (DE 2, p. 9)  Not only that, Burns also hurled

verbal threats, threatening to stab Sergeant Eaton the first chance he got. The threat to stab Sergeant Eaton was heard by other officers in the area. (Ex. 9) This threat was real and Burns had the means to carry out. Later on the same evening, Burns was found in his cell cutting himself with a sharp object that was found hidden underneath his tongue. (Ex. 6)

Third, Eaton's use of force was tempered. The *Treats* court noted that Treats was not aggressive, had not been warned, and had been subjected to a "prolonged' spray of chemical agent and then knocked to the floor. Here, Eaton administered three very short (seconds) burst of chemical agent in Plaintiff's direction, Plaintiff states he was warned about the use of chemical agents, and Plaintiff was never knocked to the floor.

Lastly, in a recent case in the Eastern District of Arkansas, which also relies on *Treats, supra,* and *Jones, supra,* the court held that three bursts of chemical agent to regain control of a recalcitrant inmate did not violate the Eighth Amendment. In *Dorsey v. Page,* Case No. 1:10cv00046 (JMM/JTR), the plaintiff-inmate was placed in an isolation shower after he destroyed a sprinkler head in cell. While in the cell, Dorsey was ordered, three separate times, to remove his clothing so he could be searched for any potentially hidden pieces of the sprinkler or other weapons and each time Plaintiff refused. After becoming belligerent, an extraction team assembled and Dorsey was given a final order to remove his clothing and submit to restraints. Dorsey made a motion to submit to restraints, but refused to remove his clothing. After Dorsey refused to remove his clothing, officers sprayed him with two short bursts of chemical agent to the face. After another order to remove his clothing, Plaintiff again refused and the guards administered a third burst of pepper spray. Finally, Dorsey complied with orders and his shower was activated so he could cleanse himself of the pepper spray.

In *Dorsey, supra,* the Plaintiff asserted that officers were not authorized to use chemical agents because he was locked behind a cell door and could not harm the officers. *Id*. at 7. The court disagreed, noting that prison officials do not have to be under any physical attack in order to utilize pepper spray. Citing *Treats*, the court stated, if "the noncompliance. . . poses a threat to other persons or prison security," pepper spray can be used. *Id*. at 7-8. The court noted that Plaintiff's repeated refusal to follow orders, and his being allowed to shower following the use of pepper spray, made it clear that the use of chemical agents was not unreasonable and was only used in a good-faith effort to maintain discipline. *Id*.

The case at bar is markedly similar to *Dorsey* in that Burns, at the time of the incident, was already housed in Isolation. He was placed in an isolation shower, he was given direct orders to submit to restraints, he refused those orders on several occasions, he was sprayed three times with pepper spray, and he was allowed to shower after the incident. Slightly different in our case is the fact that Burns threw objects at, spit on, and spewed verbal threats at Officer Eaton. Each of the actions taken by Burns posed an immediate threat to Eaton by way of physical injury, future physical harm or injury, or by communicable disease or illness. Accordingly, Eaton used minimal force in order to maintain discipline and regain control of Burns. It is of no consequence that Plaintiff was locked in a shower cell. *See Dorsey, supra.*

Furthermore, Plaintiff was allowed to shower within ten minutes of being sprayed. The *Dorsey* court noted that the inmate-plaintiff was allowed to shower after the incident. Following the incident in this case, Sergeant Eaton exited the isolation area to get his supervisor, Lieutenant Walker. (Ex. 10) It is the practice of the unit to separate staff and inmates following such incidents. (Ex. 10) Accordingly, Sergeant Eaton did not provide Plaintiff a shower because he removed himself from the isolation area to locate a supervisor. (Ex. 10) Instead, Lieutenant

Walker arrived to the isolation shower area within ten minutes and provided Plaintiff a shower. (DE 2, p. 10) Plaintiff admits that he was allowed to shower within 10 minutes of being sprayed. (DE 2, p. 10)   Plaintiff also concedes that forty-five minutes later, medical personnel reported to the isolation area to clean his eyes, but that his eyes were clear by then.  (DE 2, p. 10)  Thus, Plaintiff suffered no actual injury.  *See Jones v. Shields*, 207 F.3d 491, 495 (8th Cir. 2000)(finding *de minimis* injury where inmate was sprayed with pepper spray and the effects were only felt for forty-five minutes)).

In sum, Eaton was well within ADC policy when he administered the pepper spray at Plaintiff.  ADC policy allows for the use of force in situations including, but not limited to: (1) Protecting individuals from a reasonably foreseeable injury by an inmate; and (2) Compelling compliance with orders.  At the time Eaton had first administered pepper spray, Plaintiff had been given verbal commands to submit to handcuff restraints which plaintiff refused to do. Eaton, however, did not use force to persuade Plaintiff to follow commands.  It was not until after Plaintiff had hurled an object that Eaton made the decision to use pepper spray.  Plaintiff later threw another object at Eaton and expelled bodily fluid on Eaton.  Each of these instances constitutes an assault on Eaton.  Plaintiff only suffered temporary discomfort from the use of the spray.  Since Eaton only used the amount of force necessary to regain control of Plaintiff, and since Plaintiff suffered no physical injury but only temporary discomfort, Plaintiff's complaint of excessive force should be dismissed as a matter of law.

**D.  Eaton is entitled to qualified immunity**

Qualified immunity shields governmental employees acting within the scope of their duties from suit for money damages so long as their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would know." *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818, (1982). To determine the existence of qualified immunity, the court need address two questions: (1) whether the plaintiff has shown the violation of a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151 (2001).

To prove a violation of his Eighth Amendment right, Plaintiff has to meet two requirements set forth in *Farmer v. Brennan*, 511 U.S. 825. "First, the deprivation alleged must be, objectively, 'sufficiently serious'. *Id.* at 834. Furthermore, the act has to, in some way, result in the denial of "'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman,* 452 U.S. 337 (1981). If the court decides there was no violation of a constitutional right, then the Defendants are entitled to qualified immunity.

In the present case, Plaintiff cannot show a sufficiently serious deprivation of his constitutional rights. The *Hudson* court understood that the use of force is sometimes necessary in the prison setting. As such, guards will only be liable for the use of force if it is completely unjustified. Eaton's three brief bursts of pepper spray were justified and done pursuant to ADC's Use of Force and Chemical Agents policies and caused no physical injury to Plaintiff. As established above, the use of force did not violate Burn's constitutional rights, and therefore, Sergeant Eaton is entitled to Qualified Immunity.

### E. Plaintiff did not suffer any physical injury.

The PLRA states, "[n]o Federal Action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody with a prior showing of physical injury. 42 U.S. C. § 1997e(e). *See also Royal v. Kautzy*, 375 F.3d 720 (8th Cir. 2004). This clear restriction on damages applies to all federal claims alleging constitutional violations. *Royal*, 375 F.3d at 723. The Eighth Circuit Court of Appeals has

concluded that Congress did not intend section 1997e(e) to limit recovery for mental and emotional damages in select cases; rather, Congress fully intended to limited such damages in *all* federal actions brought by prisoners. *Id*. (emphasis added). Plaintiff has not suffered any physical injury. Accordingly, he is not entitled to damages for emotional distress. 42 U.S.C. § 1997e(e); *Royal*, *supra*.

Section 803(d) of the PLRA, codified as 42 U.S.C. § 1997e(e), entitled "Limitation on Recovery," provides:

**No Federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.**

This clear restriction on damages applies to all federal claims alleging constitutional violations. *Royal v. Kautzky,* 375 F.3d 720, 723 (8th Cir. 2004) The Eighth Circuit Court of Appeals has concluded that Congress did not intend section 1997e(e) to limit recovery for mental and emotional damages in select cases; rather, Congress fully intended to limit such damages in *all* federal actions brought by prisoners. *Id*. (emphasis added). Plaintiff is simply not entitled to compensatory damages.

Although § 1997e(e) bars recovery of compensatory damages for Plaintiff, Defendants acknowledge that section 1997e permits nominal, punitive and injunctive relief when a prisoner proves that he is entitled to such damages. This is not such a case. As demonstrated herein, Defendants are entitled to judgment as a matter of law on all of Plaintiff's claims because: (1) they are entitled to qualified and sovereign immunity; (2) Plaintiff has failed to state an Excessive Force claim; (3) and Plaintiff has not suffered any constitutional violation. Because Defendants are entitled to a Judgment as a Matter of Law, on all of Plaintiff's claims, then there

can be no award of nominal or punitive damages or injunctive or declaratory relief. In sum, Plaintiff is not entitled to compensatory, nominal, punitive, or injunctive relief. Because there is no relief that can be awarded to Plaintiff his complaint should be dismissed with prejudice in its entirety.

**WHEREFORE**, the ADC Defendant prays that their Motion for Summary Judgment be granted, that the dismissal count as a strike for purposes of the PLRA for failure to state a claim and/or frivolous/malicious action, and that this court award them any and all relief to which they may be entitled.

Respectfully submitted,

DUSTIN MCDANIEL,
Attorney General

/s/ Ka Tina R. Hodge
Arkansas Bar #2003100
Attorney for ADC Defendants
Assistant Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201-2610
Telephone: (501) 682-1307
Facsimile: (501) 682-2591
katina.hodge@arkansasag.gov

**CERTIFICATE OF SERVICE**

I, Ka Tina R. Hodge, Assistant Attorney General, hereby certify that on this October 22, 2012, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to any CM/ECF participants.

/s/ Ka Tina R. Hodge

                                        Arkansas Bar #2003100  
                                        Attorney for ADC Defendants  
                                        Assistant Attorney General  
                                        323 Center Street, Suite 200  
                                        Little Rock, AR 72201-2610  
                                        Telephone: (501) 682-1307  
                                        Facsimile: (501) 682-2591  
                                        katina.hodge@arkansasag.gov