IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION

| | | |
|---|---|---|
| ROY D. BURNS, | * | |
| ADC #091713 | * | |
|     Plaintiff, | * | |
| | * | |
| | * | |
| vs. | * | No. 2:11-cv-00049-SWW-BD |
| | * | |
| | * | |
| | * | |
| SERGEANT EDWARD D. EATON and | * | |
| CORPORAL RENITA WHITE, | * | |
| | * | |
|     Defendants. | * | |

## OPINION AND ORDER

Plaintiff Roy D. Burns, an inmate confined in the Maximum Security Unit of the Arkansas Department of Correction (ADC), brings this 42 U.S.C. § 1983 action against Defendants Edward D. Eaton, a Sergeant with the ADC, and Renita White, a Corporal with the ADC, alleging that Eaton used excessive force against him on July 2, 2010, by spraying him with an excessive amount of pepper spray and by preventing him from promptly decontaminating himself, and that White violated his constitutional rights when she witnessed this incident, failed to intervene, and turned the shower water off so that Burns could not rinse off the pepper spray.  Defendants move for summary judgment [doc.#58] arguing that (1) Burns's claims against Defendants for money damages are barred by sovereign immunity; (2) Burns failed to exhaust his claim against White; (3) Defendants did not use excessive force against Burns; and (4) Eaton is entitled to qualified immunity.

On January 8, 2013, the Court received a Partial Recommended Disposition [doc.#75] from Magistrate Judge Beth Deere in which she recommends that Defendants' motion for summary judgment be granted in part and denied in part.  Specifically, the Magistrate Judge recommends (1) that Burn's claims for money damages against Eaton and White in their official capacities be dismissed with prejudice; (2) that Burns's claim regarding Eaton's use of force in applying pepper spray and his claim that White failed to intervene in the application of pepper spray be dismissed with prejudice; and (3) that Burns be permitted to proceed on his claim that Eaton and White, in their individual capacities, prevented him from decontaminating himself for at least ten minutes after Burns had been subdued with the pepper spray.  In so recommending, the Magistrate Judge concludes that Burns exhausted his claim against White and that Eaton is not entitled to qualified immunity.

Defendants have filed objections to the Magistrate Judge's Partial Recommended Disposition [doc.#'s 76, 77].  After careful review of the Partial Recommended Disposition and objections, as well as a *de novo* review of the record, the Court concludes that the Partial Recommended Disposition should be, and hereby is, approved and adopted as this Court's findings with respect to the Magistrate Judge's recommendation (1) that Burn's claims for money damages against Eaton and White in their official capacities be dismissed with prejudice, and (2) that Burns's claim regarding Eaton's use of force in applying pepper spray and his claim that White failed to intervene in the application of pepper spray be dismissed with prejudice.  The Court respectfully declines

to adopt the remainder of the Magistrate Judge's Partial Recommended Disposition, however, and finds that Defendants' motion for summary judgment should be, and hereby is, granted in its entirety.

I.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party "bears the initial responsibility of informing the district court of the basis for its motion," and must identify "those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has properly supported its motion for summary judgment, the nonmoving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The nonmoving party must respond by submitting evidentiary materials that set out "'specific facts showing ... a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (quoting Fed.R.Civ.P. 56(e)). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita,* 475 U.S. at 587 (citations omitted). Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation and quotation marks

omitted). However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita,* 475 U.S. at 587 (citation omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

II.

The Court first declines to adopt that portion of the Magistrate Judge's Partial Recommended Disposition finding that Burns did not exhaust his claim against White. In finding that Burns did exhaust his claim against White, the Magistrate Judge states as follows:

> Prisoners who want to file a lawsuit under 42 U.S.C. § 1983 must first exhaust all "available" remedies. 42 U.S.C. § 1997e(a); *Booth v. Churner*, 532 U.S. 731, 738, 121 S.Ct. 1819 (2001) (holding that available remedies "must be exhausted before a complaint under § 1983 may be entertained"). For purposes of § 1983, an "available remedy" is one that is "capable of use for the accomplishment of a purpose; immediately utilizable [and] accessible." *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001). And it does not matter that the prisoner subjectively believed that there was no point in pursuing his administrative remedies. *Lyon v. Vande Krol*, 305 F.3d 806, 808–09 (8th Cir. 2002); *Chelette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000), cert. denied 531 U.S. 1156 (2001). If exhaustion is not complete by the time a lawsuit is filed, the Court must dismiss all claims that have not been exhausted. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003).
>
> Here, Defendants argue that Mr. Burns failed to exhaust his claims against Defendant White because Defendant White is not mentioned in Mr. Burns's fully exhausted grievance relating to the claims giving rise to this lawsuit. However, the failure of an inmate to name a prison official

> specifically in the grievance procedure does not preclude exhaustion. Rather, if prison officials address the merits of an inmate's grievance, even if the grievance is procedurally flawed, the exhaustion requirement is satisfied. See *Bower v. Kelley*, Case No. 12-678 (8th Cir. Dec. 13, 2012) (per curiam) and *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (per curiam).
>
> Here, it is undisputed that Mr. Burns fully exhausted his claim regarding Defendant Eaton's alleged use of excessive force. Although Defendant White was not named in that grievance, the merits of Mr. Burns's claim were addressed in grievance EAM10-02858. (#58-5 at pp.1-3) Accordingly, although the grievance was procedurally flawed, the statutory exhaustion requirement was satisfied, and Defendants are not entitled to judgment as a matter of law on that basis.

Partial Recommended Disposition at 4-5 (footnote omitted).

A.

The Court finds that Burns cannot be said to have exhausted his claim against White as he did not name White in his grievance papers (EAM10-02858). Pursuant to ADC Administrative Directive 09-01 – Inmate Grievance Procedure – "[g]rievances must specifically name each individual involved for a proper investigation and response to be completed by the ADC" and "[i]nmates who fail to name all parties during the grievance process may have their lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties." While the Prison Litigation Reform Act (PLRA) itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007). By failing to name White in his grievance papers, Burns has failed to properly exhaust his claim against her and White is

thus entitled to judgment as a matter of law. See *Jones v. Hobbs*, No. 12-2002 (8th Cir. Jan. 22, 2013) (per curiam) (finding that inmate failed to exhaust his administrative remedies against two ADC employees because he did not name either of them in his grievance papers, as required by the grievance policy of the ADC).

The Court recognizes that "the PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits." *Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) (per curiam). It is not clear, however, how Burns's failure to name White in his grievance papers constitutes a "procedural flaw[]" that can satisfy "the statutory exhaustion requirement[s]," Partial Recommended Disposition at 5, given that Burns also failed to include in his grievance papers his allegations that White or anyone else witnessed the incident of which he complains, failed to intervene, and turned the shower water off so that Burns could not rinse off the pepper spray. Those allegations simply were not raised by Burns in his grievance papers and, thus, cannot be said to have been considered on the merits for purposes of possibly satisfying the exhaustion requirements. See AD-09-01 (an inmate must be "specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses..." in order to exhaust administrative remedies prior to filing a lawsuit).

B.

In a footnote, the Magistrate Judge states that "[b]ecause Defendant White is not entitled to judgment as a matter of law based on Mr. Burns's failure to exhaust, the Court will not address the issue of whether Mr. Burns received notice of the ADC policy

governing exhaustion." Partial Recommended Disposition at 5 n.1. The Court must therefore address this issue in the first instance, having found that White is entitled to judgment as a matter of law based on Burns's failure to exhaust his claim against her.

The Court does not find any genuine issue of material fact concerning whether Burns received notice of the ADC policy governing exhaustion as Defendants assert in their Statement of Facts in Support of their Motion for Summary Judgment that "[i]nmates are informed that failure to name all parties involved may result in a dismissal of their claims for failure to exhaust administrative remedies," Defs.' St. of Mat. Facts in Supp. of their Mot. for Summ. J. at ¶ 52 [doc.#59], and Burns does not controvert this assertion in his Statement of Facts in Support of his Response to Defendant's Motion for Summary Judgment [doc.#67]. Accordingly, Defendants' assertion that "[i]nmates are informed that failure to name all parties involved may result in a dismissal of their claims for failure to exhaust administrative remedies" is deemed admitted. See Rule 56.1 of the Local Rules of the United States District Court for the Eastern and Western Districts of Arkansas (providing that all material facts set forth in the statement of material facts filed by the moving party shall be deemed admitted unless controverted by the statement filed by the non-moving party). The Court therefore finds that Burns was aware of the ADC policy governing exhaustion.[1]

---

[1] Burns states that "[d]ue to the State's deliberate intervention to deny this Attorney's access to client, this attorney does not possess the knowledge sufficient to refute this allegation [that Burns knew or should have known of the obligations and consequences of failure to exhaust administrative remedies] except to state that the State has failed to show that the Plaintiff was in

III.

The Court now turns to Eaton's use of pepper spray on Burns.  The Magistrate Judge describes the circumstances surrounding the use of pepper spray on Burns as follows:

> According to the allegations in Mr. Burns's verified complaint, on July 2, 2010, he was taking a shower in isolation.  Around 3:20 in the afternoon, Defendant Eaton came to his shower and instructed him to "catch the cuffs" so that he could be returned to his cell.  (#2 at p.8)  Mr. Burns refused.  Defendant Eaton again instructed Mr. Burns to "catch the cuffs"; he again refused.  At that time, Defendant Eaton pulled out his can of pepper spray and cautioned Mr. Burns that if he again refused to obey a direct order, he would be sprayed.
>
> After engaging in a brief conversation, Defendant Eaton allegedly stated "catch the cuffs or I'll spray you." (#2 at p.9)  Then Mr. Burns, realizing that the situation was "serious," threw a shampoo bottle at Defendant Eaton. (#2 at p.9)  Defendant Eaton sprayed Mr. Burns with a two-to-three second burst of pepper spray.  Mr. Burns responded by throwing a soap dish at Defendant Eaton.  Defendant Eaton again sprayed Mr. Burns with a two-to-three second burst of pepper spray.  Mr. Burns responded by spitting on Defendant Eaton.  Defendant Eaton then sprayed Mr. Burns's face and genital area with his third, and final, burst of pepper spray.  Mr. Burns claims that Defendant White witnessed this series of events and failed to assist him.
>
> After the final burst of pepper spray, Mr. Burns began to scream and attempted to turn on the shower.  According to Mr. Burns, Defendant Eaton instructed Defendant White to turn the shower water off so that Mr. Burns would not be able to rinse off the chemical agent from his face and body.  Defendant White turned off the shower.  About ten or fifteen minutes later,

---

receipt of a copy of the administrative rules or had knowledge of the consequences of failing to exhaust administrative remedies against Defendant White." Br. in Supp. of Pl.'s Resp. to Def.s' Mot. for Summ. J. at 4-5 [doc.#68].  It is not explained, however, how Burns and his attorney were unable to communicate about any notice Burns had about the exhaustion procedures.  The Court finds that Burns has not created a genuine issue of material fact with respect to this notice issue.

>Lieutenant Walker (not a party to this lawsuit) turned the shower water on so that Mr. Burns could decontaminate himself.

Partial Recommended Disposition at 6-7.

>The Court agrees with the Magistrate Judge that

>[b]ased on this information, it appears that Defendant Eaton was justified in using the chemical agent to force Mr. Burns to comply. Mr. Burns refused to obey multiple direct orders and continued to grow increasingly combative. Even after Defendant Eaton applied pepper spray, Mr. Burns continued to throw various items at Defendant Eaton and began spitting on him. Based on these undisputed facts, the force used was not excessive. Further, Defendant White is not liable for her failure to assist Mr. Burns. Because Defendant Eaton was justified in using force, Defendant White had no obligation to intervene. Accordingly, these claims should be dismissed, with prejudice.

Partial Recommended Disposition at 7.

The Court, however, respectfully declines to adopt that portion of the Magistrate Judge's Partial Recommended Disposition (1) that Burns be permitted to proceed on his claim that Eaton and White (who the Court has already determined is entitled to judgment as a matter of law), in their individual capacities, prevented him from decontaminating himself for at least ten minutes after Burns had been subdued with the pepper spray and that important facts remain in dispute as to whether Eaton or White thereby acted maliciously,[2] and (2) that Eaton is not entitled to qualified immunity. Partial Recommended Disposition at 7, 10-11.

---

[2] This allegation arguably was not properly exhausted as Burns does not allege in his grievance papers that Eaton or anyone else prevented him from decontaminating himself for at least ten minutes after he had been subdued with the pepper spray. Nevertheless, the Court addresses this allegation as Defendants apparently do not claim that Burns failed to exhaust this allegation.

A.

"It is 'well established that a malicious and sadistic use of force by a prison official against a prisoner, done with the intent to injure and causing actual injury, is enough to establish a violation of the Eighth Amendment's cruel and unusual punishment clause.'" *Williams v. Jackson*, 600 F.3d 1007, 1012 (8th Cir. 2012) (quoting *Foulk v. Charrier,* 262 F.3d 687, 702 (8th Cir. 2001)). "'[T]he 'core judicial inquiry' ... [is] not whether a certain quantum of injury was sustained, but rather 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 130 S.Ct. 1175, 1177-1178 (2010) (per curiam)).

"Qualified immunity shields a government official from liability and the burdens of litigation unless his conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Loch v. City of Litchfield*, 689 F.3d 961, 965 (8th Cir. 2012) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). "An official is entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to the plaintiff, establishes a violation of a constitutional or statutory right, and (2) the right was clearly established at the time of the violation." *Id*. (citing *Pearson v. Callahan,* 555 U.S. 223, 232 (2009)).

B.

In his affidavit, Burns states in pertinent part as follows:

> 3. The subject of the suit involves an incident in which Sgt. Eaton sprayed me with a chemical agent while in the shower. Sgt. Eaton sprayed me three times all over the front part of my body and face and ears. Each spraying

> was about a 2-3 second burst and the entire spraying period took between one and one and a half minutes.
>
> 4. The immediate effect of the spraying was an intense burning pain, especially on my face and genital areas. the burning lasted about 3 days and was exacerbated everytime I scratched my face, ears or genital area.
>
> 5. When I was first sprayed, I turned on the water to attempt to wash it off. I was under the water about 5 seconds when Sgt. Eaton told Cpl. White 'I didn't tell that bitch he could wash that off, so turn the water off.' She (Cpl. White) then jumped up and turned off the water. Between 10 and 15 minutes later Lt. Walker came in and made them turn the water back on.

Burns Aff. at ¶ 5 [doc.#69].[3]

The Magistrate Judge states that Eaton has failed to offer any explanation as to why he did not allow Burns to decontaminate himself after being sprayed with three separate bursts of pepper spray, or why he instructed White to turn the shower water off to prevent Burns from decontaminating himself. Partial Recommended Disposition at 10. She states that based on the evidence presented, after the third burst of pepper spray was administered, Burns no longer posed a threat to either Defendant's safety, and Eaton thus is not entitled to qualified immunity. *Id.* The Court disagrees.

In his affidavit, Eaton states that "the length of time between the last spray and when Burns would have been allowed to shower would have been dependent on Burns's actions" and that "[o]nce he calmed down and discontinued his aggressive and assaultive

---

[3] In stating in ¶ 5 of his affidavit that Eaton instructed White to turn off the water when he "was first sprayed," it is not clear if Burns is referring to the first burst of pepper spray after which there were two others or if, as stated in his complaint, Burns is referring to the time period following the third and final burst of pepper spray.

behavior, then he would have been allowed to shower." Eaton Aff. at ¶ 15. Burns does not dispute that after he spit at Eaton (resulting in the final burst of pepper spray), Eaton, "[p]er practice, ... left the isolation shower area after being instructed to do so by his supervisor, and was not allowed back in the area where inmate Burns was since he was involved in the incident with Burns" and that having "immediately exited the area to notify his supervisor, Lieutenant Walker, of the incident," it "[t]herefore, ...would not have been Eaton's responsibility to monitor inmate Burn's decontamination shower once the supervisor was called." Def.s' St. of Facts in Supp. of their Mot. for Summ. J. at ¶¶ 21-25 [doc.#59]. Indeed, Burns acknowledged that after Eaton pepper-sprayed him, Eaton "just walk[ed] away to get a supervisor." Br. in Supp. of Pl.'s Resp. to Def.s' Mot. for Summ. J. at 5. Eaton may have refused to allow Burns to wash off the pepper spray prior to his immediately leaving the area to report the incident to Lieutenant Walker but Burns does not dispute that following the final burst of pepper spray, he threatened to stab Eaton the first chance he got, Def.s' St. of Facts in Supp. of their Mot. for Summ. J. at ¶¶ 20-21 [doc.#59], and he acknowledges that he was "really mad" after being pepper-sprayed the second time, that he was screaming following the final burst of pepper spray, and that he "ran to the back of the shower to turn the water on to wash [the pepper spray] off" (to continue his combativeness?). Compl. at ¶¶ 10-11 [doc.#2]; Am. Compl. at ¶¶ 7-8 [doc.#6]. It is clear, then, that Burns, rather than having been "subdued from the chemical agent" and "no longer pos[ing] a threat to either Defendant's safety" after the third burst of pepper spray, Partial Recommended Disposition at 10-11, was still agitated

and combative when Eaton immediately left the area to report the incident to Lieutenant Walker. Given the uncontroverted facts, the Court disagrees with the Magistrate Judge that important facts remain in dispute as to whether Eaton or White acted maliciously. Rather, the Court determines that Eaton's use of pepper spray and the 10-15 minute lapse between the final burst of pepper spray and the decontamination shower cannot in these circumstances be considered a malicious and sadistic use of force by a prison official against a prisoner, done with the intent to injure and causing actual injury, thereby violating a clearly established constitutional or statutory right of which a reasonable person would have known. *Cf. Jones v. Shields*, 207 F.3d 491, 493 (8th Cir. 2000) (Eighth Circuit found that inmate failed to prove a violation of the Eighth Amendment by use of pepper spray to his face and noted that upon being pepper-sprayed, inmate was immediately pushed against the wall and handcuffed by Officer and "remained against the wall for 10 or 15, maybe 20 minutes[,] .... just standing there .... drooling ... snot and everything."); *Perry v. Gray*, No. 07-cv-4013, 2009 WL 2413292, *4 (W.D. Ark. Aug. 4, 2009) (officer acknowledged that after receiving report of problem with inmate at approximately 14:45, he pepper-sprayed inmate and reported his actions to other officers but his shift ended at 15:00 and he "left for the day," instructing a lieutenant that inmate would need a shower; court found use of force was reasonable and dismissed action).[4]

---

[4] Burns claims in his response to Defendants' motion for summary judgment (and in his original complaint) that only extremely hot water was provided making it impossible for him to get the chemical agents off his body when water was provided. Burns, however, does not allege that Eaton (or, for that matter, White) was in any way responsible for the temperature of the water. Burns cites to "Ex. 11, 12" in ¶ 10 of his Statement of Facts in Support of his Response to

Accordingly, Eaton is entitled to qualified immunity.[5]

IV.

For the foregoing reasons, the Court adopts as this Court's findings the Magistrate Judge's Partial Recommended Disposition with respect to her recommendation (1) that Burn's claims for money damages against Eaton and White in their official capacities be dismissed with prejudice, and (2) that Burns's claim regarding Eaton's use of force in applying pepper spray and his claim that White failed to intervene in the application of pepper spray be dismissed with prejudice.  The Court respectfully declines to adopt the remainder of the Magistrate Judge's Partial Recommended Disposition, however.  Rather,

---

Defendant's Motion for Summary Judgment [doc.#67] but the Court is unable to locate those exhibits in the record.

[5] The Magistrate Judge found "particularly disturbing" Defendants' question, "'What good would chemical agents be to law enforcement officers if the effects could be immediately flushed down the drain?'"  Partial Recommended Disposition at 8 (quoting Def.s' Reply to Pl.'s Resp. to Def.s' Mot. for Summ. J. at 3 [doc.#73]).  The Magistrate Judge then posed the question, "Do the Defendants suggest that such behavior is appropriate or, even more troubling, that such conduct should be encouraged?"  Id.  Defendants, however, state in their objections that "[t]aken in context, ... the entire portion of Defendants' reply demonstrates that the purpose for which chemical agent was used and the relationship between its use and the decontamination shower was made in good faith to restore order."  Def.s' Objections to the Recommended Disposition at ¶ 54 [doc.#76].  Defendants' full quote in their reply is as follows:

> Assuming for the purpose of this Reply that Plaintiff's allegation that he was initially prohibited from removing the chemical agent and that he was permitted after 10 minutes to shower, this fact alone does not create a triable issue. To the contrary it would support the fact that chemical agent was appropriately used to prevent injury and force compliance with orders where Plaintiff was behaving belligerently and in a hostile manner. What good would chemical agents be to law enforcement officers if the effects could be immediately flushed down the drain?

Def.s' Reply to Pl.'s Resp. to Def.s' Mot. for Summ. J. at 3 [doc.#73].

the Court finds that (1) Burns did not exhaust his claim against White, (2) no important facts remain in dispute as to whether Eaton or White acted maliciously in Eaton's use of pepper spray and the 10-15 minute lapse between the final burst of pepper spray and the decontamination shower, and (3) Eaton is entitled to qualified immunity.  Accordingly, the Court grants Defendants' motion for summary judgment [doc.#58] in its entirety and hereby dismisses this action with prejudice.  Judgment will be entered accordingly.

IT IS SO ORDERED this 29th day of January 2013.

/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE